## Carney *against* Wheatfield Township.

Upon the settlement of the account of a supervisor, whose term of office has expired, by the township auditors, he may maintain an action against the township for the amount ascertained upon such settlement to be due to him.

ERROR to the Special Court of *Indiana* county.

John Carney against the Township of Wheatfield. The plaintiff had been supervisor of the township for the year 1823. On the 23d of April 1824, the township auditors settled his account and found a balance in his favour of $281.58, for which they gave him an order upon his successor in office; and this was an action on the case in *assumpsit* to recover the money from the township.

The court below was of opinion that the plaintiff was not entitled to recover, and directed a verdict for the defendant.

*Banks*, for plaintiff in error, referred to the Act of the 6th of April 1802, sec. 4, title " Roads," which provides that a supervisor, upon the settlement of his account, is entitled to an order upon his successor in office for any balance which may be due to him; from which the necessary implication arises that he may enforce the payment of it by action.

*Foster*, for defendant in error, argued that a township was not liable to be sued, but upon a contract of its own making: the principle would be a bad one that a supervisor might contract a debt of any amount with himself, and recover it by action against the township.

The opinion of the Court was delivered by

HUSTON, J.—This case arose under the Act of the 6th of April 1802, the parts of which, applicable to this case, seem to be:— Section 4, which directs that at the time and place of choosing supervisors in each township, the electors shall elect four capable

[Carney v. Wheatfield Township.]

and discreet freeholders, whose duty it shall be to settle the accounts of the supervisors whose time is about to expire; and the supervisors on the 25th of March, or within ten days thereafter, shall produce fair accounts of all sums of money by him or them expended on the highways, and of all sums of money by him or them received by virtue of any assessment or otherwise, and of all fines and penalties due from themselves or others, which shall be entered in a book kept for that purpose, and attested by him or them on oath, if the freeholders or any of them shall require it: and the freeholders shall have full power to settle and adjust such accounts, and to allow such sums and charges as they think reasonable.  Then follows a provision for compelling supervisors to pay over any money in their hands to their successors: " But in case such persons who shall have served as supervisor or supervisors shall be found to be in advance for moneys expended on the public roads, and shall have carefully collected the sums of money assessed and imposed by this Act, then the said freeholders or inhabitants so chosen to settle the accounts as aforesaid, or any three of them, shall in like manner order the succeeding supervisors or supervisor to reimburse the same as soon as a sufficient sum of money shall come to their hands."

This section assumes that a supervisor may expend more than the amount of tax; and that all taxes are not paid by working on the roads, as they never are.  The next section provides for assessing a tax not exceeding half a cent in the dollar.  It directs that notice shall be given to each person to attend and work out their taxes; but on their neglect so to do, the supervisor is to proceed and collect the same.  Provision is made in this and a subsequent Act for collecting the tax on unseated lands: at first the treasurer was to pay this out of the county treasury, but by the Act of 1811 the treasurer was not bound to pay until the road tax was paid in or raised by sale of the lands.

In section 9th the supervisors were required and enjoined to hire and employ a sufficient number of hands to make, open and repair all the public roads within their respective townships, which by the Court of Quarter Sessions have been or shall be declared public highways; and to purchase wood and other materials necessary for the purpose, and to take care that said roads be *forthwith effectually* opened, cleared and amended.  By section 12, the supervisor, if he neglects to perform the duties by this law required, is liable in a summary way to be fined by a justice of the peace, not less than $4 nor more than $50.  By section 20, the supervisors are enjoined and required to make and maintain causeways of stone or timber on marshy ground; and to make bridges over small streams and rivulets and across deep gullies, where such are necessary for the ease and safety of travellers.

From the preceding references to the law, it will be seen that much was required of a supervisor; that it was known that in the

[Carney v. Wheatfield Township.]

course of his duty he must open roads and repair or construct bridges and causeways, when and where he could not procure the labour to be performed by the inhabitants in working out their taxes, and this under the penalty of the fine above mentioned; to which, in 1808, was added indictment in the Quarter Sessions— that in the performance of his duty he was not only expected but enjoined to hire hands necessary forthwith to open, clear and amend all public roads in his township laid out or to be laid out. It was foreseen that he might be in some cases compelled to go in debt or advance money, and certainly in such case it was necessarily implied that the order on his successor should be paid; and if not paid without compulsion, should be compelled by course of law: and when we consider that those who were to pay the tax chose four of themselves to settle the supervisor's accounts and allow only such as they found to be just and reasonable, there seems to be little danger of all the terrible consequences so vividly depicted by the counsel who argued this case.

It has frequently occurred that a supervisor, in opening a new road of great length, has incurred and paid more than the tax of that year, and on settlement got an order on his successors; and sometimes there was some delay before he could be paid out of the next or even wholly paid out of the second year's road tax, beside keeping the roads in repair: but I do not know of any case in which the township supposed they were not to pay at all. I could name more than one case before Judge Walker in Centre county, in which suits were brought and recovery had; and one case in which, after judgment for Andrew Boggs, a supervisor, I was prepared to move for a *mandamus* to the existing supervisors, and it was ended by their agreeing that he should receive all the proceeds of road taxes on unseated lands until his claim was paid.

But we have a case bearing on the subject. By a supplement to the road Acts of the 30th of March 1811, the commissioners are directed to give an order on the treasurer to pay to the supervisors the amount due them out of the proceeds of unseated lands in his hands or when it shall come into his hands. In *Willard* v. *Parker*, (1 *Rawle* 448), we have a case on this subject, in which it is said—if the supervisor had worked on the road to the amount of the order, or had paid others for their labour, they may have acquired such an interest in the order as to enable them to maintain a suit in their own names; and in the last sentence, " if the account is settled, and for an advance of money by the supervisors an order is given by the auditors, the succeeding supervisors are bound to pay."

After this the laws relating to township officers and assessments contemplated that a township might be in debt to a supervisor; and the Act of the 27th of February 1835, provides, in section 7th: " It shall be lawful for the supervisors of any township, in addi-

IV. — 28　　　　　T

[Carney v. Wheatfield Township.]

tion to the authority conferred by the 25th section of the Act to which this is a supplement (which gives power to assess and levy taxes, to open roads and keep them in repair), to levy a rate or assessment, and collect the same, for the purpose of discharging any just debt due to a former supervisor or overseer of the poor."

Some payments appear to have been made to the plaintiff; he has a right to ascertain the amount due him by a suit, and then if the supervisors of the time disregard this law, a mode may perhaps be found to compel them to do their duty.

Judgment reversed, and a *venire de novo* awarded.